Thank you, Your Honor. May it please the Court, Counsel, my name is Nate Nieman, and I represent Defendant Appellant Ki-Jana Ivey, who was convicted of possession of firearms offenses after the District Court denied his motion to suppress. There are a number of cases that hold that searches of cell phones are proper because they are tools of the trade, so to speak, for drug traffickers. So when the subject of the investigation is drug trafficking, then it's fair game essentially for law enforcement to search cell phones. But this is not one of those cases. This is not a case that involves drugs or tools of the trade attendant to any other illegal activity. This is a case in which a firearm was located in a vehicle and the officer was trying to determine who the firearm belonged to by searching the cell phone. And the rationale that the officer used to obtain the search warrant for the cell phone was that cell phones contain social media that may talk about crimes, show communications, post photos, send messages, pictures and videos, etc. That those social media accounts can help identify offenders and their associates, and that the officer was hopeful in this case that the leaves out of the search warrant, and I think is a very important consideration here. And I've discussed this by citing to a New York District Court case that talks more extensively about these statistics is that only 9.2% of users of, I think it was the Facebook platform, accessed that exclusively through cell use. So in other words, the law enforcement officer who was seeking to search the warrant, or seeking to search the phone, seemed to imply that the phone would the overwhelming majority of social media users either access social media platforms by computer only or by computer and cell phone. So there's nothing unique about a cell phone that would make that likely to show social media activity that would be useful to law enforcement. What the officer was looking for and what the magistrate court eventually allowed him to do was a general rummaging in his phone for evidence that would link him to this firearm. I've got a fact question. The warrant affidavit isn't in the addendum. Was the prior gun photo of the defendant with a gun, that was part of the warrant affidavit? That was part of the probable cause showing this, what was it, May 20? The active Facebook account with a May 2021 picture of a firearm, was that part of the showing of probable cause? And if so, where did the government get that information? Your Honor, I don't believe that a photograph from the social media was attached to the warrant as evidence, but it was referenced. It was referenced. Do you know the source of that information? I do not know. The search warrant doesn't indicate to my recollection how that information was achieved. Wasn't it on Facebook? It was. The officer just type in the guy's name and find it on the internet? That's what I think had occurred at the traffic stop. So they might have gotten my client's name, looked him up on Facebook, saw the picture of the firearm, and put two and two together. And I think that that's how it got into the warrant application. So I think the initial searching of the Facebook took place around the traffic stop, somewhere around that time. So I think that the broader implications of this case that go beyond the initial facts of this case are... Why should there be suppression? Why was it an error to deny suppression? It was an error to deny suppression because the court issued a general search warrant. And the court issued a general warrant that allowed the police to rummage through the phone for evidence when there was no probable cause to believe that evidence would be found on that phone. And the reason that that... Could you just talk about the reasons why that might be some probability of finding evidence when cell phones are commonly used on social media and social media may be a place for the presence of images. And not only that, cell phones are also storage devices for images in any number of places. It's not like there's one single folder in a cell phone that will have all the images. There may be multiple applications that store, there may be in a chip, additional memory chip that's included in the cell phone or been installed in it. Why would the search warrant not allow access to the various places that the information might be found? Well, I think that to answer that question, if you kind of turned the question on its head and ask, number one, why were law enforcement interested in looking at the cell phone in the first place? And they were interested in looking at the cell phone in the first place. They thought that it would show some picture or video or something to that effect of Mr. Ivey handling or possessing the firearm that they found in the vehicle. I think that that's what they were looking for. They had seen him possessing another different firearm in a previous picture on Facebook and they were hoping that the cell phone would contain that type of information that they were needing. But they had no idea that that kind of information would be on the phone. And typically when in other cases where police are searching cell phones in drug trafficking cases, for instance, there'll be a boilerplate paragraph in the search warrant saying it's common for drug users or drug dealers to use cell phones to coordinate activity and to you know, that they're commonly used for facilitating drug trafficking, etc. But there was no such boilerplate language in this search warrant that indicated why a cell phone search was necessary. I think that our recent jurisprudence in the United States Supreme Court underlines the importance of cell phones as this sort of independent protected space, I guess if you will. So if they had had that specific, some kind of boilerplate or something else, then the breadth of the warrant is no problem. In other words, this isn't really a probable cause issue. Well, respectfully, I think it's both and we've argued both. How is it a general warrant issue? What is it supposed to say if they have reason to believe that there will be information in there linking Mr. Ivey to the gun in the car or perhaps other guns? How is it supposed to be Well, general warrants... I know what they are conceptually, but this is a different age. Have you got a case that says, well, you have to do something different? You can't just say search the phone? Well, I don't think that... You have some child porn cases, I think, where you have to identify what you're searching for. But they did that here. You just said what they were looking for. Now, how is the warrant, how is the issuing magistrate supposed to craft something less, quote, general based on that probable cause, assuming it was sufficient? A cell phone is a repository of a lot of different things. Certainly. And some of those things have heightened expectations of privacy more so than others. And I think that the search warrant in this case could have been targeted more specifically towards the evidence that law enforcement was seeking with respect to the identity of the firearm owner. What's your best case for this kind of... case on point for that? So would it have had to identify a specific application or drive or other portion of the phone? I think that that would have been the best practice. But is there a case that requires that? I don't have anything specifically on point that I can phone calls and text messages and other specific aspects of the phone data. The warrant allowed to search the, quote, contents of the phone. Read the rest. Or you don't have the whole thing in front of you? I do. Well, I have the applicable language. The search warrant allowed law enforcement to search an Apple iPhone unknown model number with a cell phone number 319-601-0953 in the contents of the cell phone. So it made no, it made, established no guardrails on... Didn't it identify the phone calls missed, received and dialed, text messages, Facebook messages, contacts, Internet sites visited and histories, photographs, videos, GPS locations? Does that identify? I believe that that may have been part of the search warrant application. I don't know if the search warrant itself indicated that. I'm not sure. I see my time is up. Thank you. Thank you, Mr. Newman. Welcome back, Mr. Ripley. Thank you, Your Honor. Good morning again. I am Will Ripley. I'm here on behalf of the United States. And may it please the Court, this warrant that's at issue here in this case was supported fully by probable cause. It was not a general warrant. And for those reasons, the district court's decision not to suppress any evidence found during the execution of it was not erroneous. Of course, this Court's well aware of the threshold here. We need to, there needs to be a fair probability that evidence of a crime will be found in the place to be searched. In this case, of course, the place is a cell phone. The determination whether or not that fair probability exists involves common sense conclusions about human behavior. I believe that some of the specific questions about the warrant that this Court inquired of Mr. Newman, I believe have been answered. But specifically, Judge Loken, you inquired about how it was that this prior photo was accessed. In fact, paragraph 10 of the warrant application indicates your affiant performed an open source Facebook search for Kajana Ivey. The search shows Ivey does have a Facebook account. The Facebook account shows pictures of Ivey that have been posted during the 2022 year. Most recently, on April 7, 2022, Ivey made a post to the account. Ivey did post a picture of a firearm in May 2021. So an open source Facebook search, what that's going to refer to is essentially what Judge Colleton indicated, which is just find him on Facebook. He was active as recently as the day before the posted to that same account. And that, the timing of that prior firearm would have been essentially identical in all relevant ways to the timing of the traffic stop, which is to say at that time, Mr. Ivey was on supervisory loose with the Southern District of Iowa for a prior felony conviction for illegally possessing a firearm. And so his posting of that, the timing of that is very similar to him sitting over the top of the firearm in Mr. Swayzer's vehicle. Mr. Neiman suggests there wasn't any sort of a boilerplate. He tries to distinguish this from so many of the cases this Court has seen, which involve language similar to cellular phones and smartphones are tools of the trade for drug distributors, things like that. Mr. Neiman these days for people in illegal possession of firearms to post and boast and advertise their possession of firearms as it is for people engaged in drug distribution to utilize firearms as tools of the trade. And in fact, paragraph three of that same application for a search warrant indicates that your affluent has completed training on offenders, plural, plural and possessive, offenders use of social media platforms to include Facebook, et cetera. There's a listing then of various platforms. It continues that your affluent through training and experience has found that offenders will often use social media platforms to talk about their messages and post pictures and videos using the resources available on these platforms. So that right there is, that paragraph is that boilerplate that brings this all together, which is it expresses that law enforcement and the affluent here in particular has experienced that and curious as it may be, it remains very common that people in illegal possession of items to include firearms, they brag about it. They post about it. And they do so by taking pictures with smartphones and then sharing that photo in some way, whether it be via Facebook, whether it be via Snapchat, whether it be texting it to someone else. And so there is very, very strong probability, not just a fair probability, a very strong probability that Mr. Ivey's phone would help inform the question of is that his gun under his seat, which of course was the ultimate question that needed to be answered here. In addition, the warrant contains Were both warrants presented to the same magistrate at the same time? I'm sorry, Your Honor. What do you mean by both warrants? Wasn't there a car warrant that is not challenged and this warrant that was? One warrant covering both places, Your Honor. One warrant covered the vehicle. That same warrant, I shouldn't say covered. One warrant requested permission. In your view, is that of any relevance? I submit that that really isn't of any consequence, assuming I answered. I would have thought you'd say it contributes to the total showing of probable cause. Oh, I guess, yes. I didn't understand that to be your question, but I do agree it does, because there might be indications. There's a fair probability that there's indications in the car as to whose firearm it is. And remember, we have a little bit of a unique situation here in that the driver of the vehicle at the time of the stop, other than his potential intoxication, was otherwise lawfully in possession of his own firearm. He disavowed any knowledge of the firearm under the seat. In the backseat at the time was the young man who could be referred to as the owner of the vehicle. He certainly, it would be referred to as his vehicle. He also disavowed any knowledge of the firearm under the seat. So we have one person associated with firearms says, it's not my gun. The person associated with the car says, it's not my gun. And so we have the person seated right above, in best position to place that gun under the seat once they see law enforcement is engaged in a traffic stop. That person is the person who is the object anyway of, it's his phone that is the object of the search warrant, which, yes, the same search warrant, to your point, Judge Loken, addressed, requested permission to search the vehicle. And that does add to the strength of the overall analysis here for the issuing judge. This certainly wasn't a general warrant. It, with very specific particularity, describes the things to be seized. Describes the phone, the number associated with it, and from where it was seized. It was from Mr. Ivey's person. The things to be searched also are particularly described in that, describes it as documents relating to the possession and or use of firearms, including receipts for firearms, ammunition, boxes, manuals, these types of things, all found in cell phone account information, including all phone calls, all text message slash Facebook messages sent and received by the phone, all listed contacts, internet sites visited and their histories, photographs and videos, and all historical GPS locations. Obviously, the probability of evidence of a crime being in those different things varies within the different types of data. Considering what the affiant already knew about Mr. Ivey's Facebook habits, very strong probability that there would be evidence of a crime by way of images, either shared within Facebook or just maybe just retained on the phone. But there are other things here, too. If text messages about Mr., you know, with Mr. Ivey and some other person requesting this firearm, there's just a lot of multitude of ways that evidence of the ownership and possession of this firearm could have been gleaned from his phone. And this warrant specifically listed all of those in, it was in the warrant, the issued warrant. And so it is not a general warrant. It definitely was supported by probable cause. Lastly, as I briefed, I won't argue it too much, but if the court were to disagree, in this case, we have an officer who obtained a search warrant that appeared properly issued on its face and that, who executed it within the scope of the warrant. And so any defect under the good faith analysis, any defect to that warrant should not lead to suppression of the evidence gleaned from it. I have time remaining, but unless there are other questions, I will yield that time. Would you agree, I haven't researched this, but it seems to me if there was probable cause shown to search the cell phone for evidence that he was in possession of the gun in the car, the fact that the government was interested in also seeing whether the phone would have pictures like the May 21, 2021, showing possession of other firearms at other points in time, that's not improper or precluded. No, not at all. If the government has probable cause, you know, to look for one crime and in the place that's being properly described, they can also look for other in a place if they see something in plain view. And so, yes, in searching through, for example, someone's camera roll, the place that photos are stored in the phone, looking for photographs of possession of the pistol that was under the seat, in this case, they also came across, this is a great example of this case, the facts, Your Honor, to address your question. Because ultimately, Mr. Ivey did, in fact, plead guilty to possession of different firearms, not the one under the seat. He pled guilty to possessing the one that was actually on the driver's hip at the time of the stop, and then a second firearm that was later found at the driver's residence, pursuant to a whole other subsequent search warrant. And so, yes, if law enforcement is properly in that place, and when it comes to searching a phone in that place is, if they're properly extracting data from an authorized location on the phone, if that data shows evidence of other crimes, there's no prohibition on using that evidence to investigate that crime going forward. I agree, Your Honor. Unless there are other questions, I will yield this final three minutes. Thank you very much. Thank you, Mr. Ripley. Thank you also, Mr. Freeman. Court appreciates counsel's participation and argument this morning. We will take the case under advisement.